Margaret Wolan, Naomi Chetlain, and Dorothy Schwartz, Trustees of Seven Fifteen South Normandie, Inc., a Colorado Corporation Dissolved v. Commissioner. Leo Wallach Family Trust, Leo Wallach, Trustee, Transferee v. Commissioner. Nathan F. Wallach Family Trust, Nathan F. Wallach, Trustee, Transferee v. Commissioner. Brother Trust, Norman Asher, Trustee, Transferee v. Commissioner. Skipper Trust, Helen S. Asher, Trustee, Transferee v. Commissioner. A. P. Family Trust, A. N. Pritzker, Trustee, Transferee v. Commissioner.
Wolan v. Commissioner
Docket Nos. 17285, 17762, 17763, 17803, 17804, 17813.
United States Tax Court
1949 Tax Ct. Memo LEXIS 49; 8 T.C.M. (CCH) 946; T.C.M. (RIA) 49259; October 12, 1949
*49 Ralph B. Mayo, C.P.A., Security Bldg., Denver, Colo., for the petitioners. Gene W. Reardon, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion The respondent has determined deficiencies in income and declared value excess profits taxes against the petitioner, Seven Fifteen South Normandie, Inc., Docket No. 17285, for the taxable year ended September 30, 1944, in the respective amounts of $5,716.24 and $3,240.74. The other petitioners are before us as transferees. They conceded that they are liable as transferees for any taxes found to be due from the taxpayer for the taxable year involved. The proceedings were consolidated for hearing. The questions in issue are the right of the taxpayer to deduct in its final return for 1944, the year of its liquidation, the following amounts: (1) The unamortized cost, amounting to $23,377.47, of a leasehold which a wholly owned subsidiary company, liquidated in 1939, had acquired from the taxpayer before the affiliation. (2) The unamortized portion of broker's commissions and expense incurred in connection with a lease executed by the taxpayer as lessor in 1941 for a period of fifteen years. (3) California *50 property taxes assessed in part during the taxable year 1944 and in part during the preceding year. The facts have all been stipulated and are found as set forth in the written stipulation filed at the hearing. Following is a summary of the facts pertinent to each of the issues. Findings of Fact Seven Fifteen South Normandie, Inc., hereinafter referred to as the taxpayer, was a Colorado corporation which was completely liquidated on September 30, 1944. It kept its books and made its returns on an accrual basis for a fiscal year ending September 30. Its return for the taxable year ended September 30, 1944, was filed with the collector for the district of Colorado. The taxpayer owned an apartment house known as "Langham Apartments" located in Los Angeles, California, which on October 30, 1936, it leased to another Colorado corporation, known as Sevenorm Corporation, for a period of twenty years. Sevenorm paid the taxpayer $35,000 advance rentals, and the taxpayer reported that amount as income in its return for 1937. Sevenorm capitalized the $35,000 payment on its books to be amortized over the twenty year life of the lease. At the time of the execution of the lease the taxpayer *51 and Sevenorm were not in any way related. Thereafter, in 1939, the taxpayer acquired all the capital stock of Sevenorm for $21,000. In November of that year Sevenorm was completely liquidated and all of its assets were distributed to the taxpayer. The unamortized balance of the lease expense on the books of Sevenorm at that time was $32,727.65. The liquidation was one upon which no gain or loss was realized under section 112(b)(6), Internal Revenue Code. The assets acquired by the petitioner in the liquidation had the same basis in its hands, for income tax purposes, as in the hands of Sevenorm. Thereafter the taxpayer claimed and was allowed an annual deduction for amortization of the lease the same as had been allowed to Sevenorm. The taxpayer was completely liquidated on September 30, 1944, and all of its assets were distributed to its stockholders. The unamortized balance of the lease expense at that time was $25,311.99, including the annual deduction of $1,934.52 for that year. The taxpayer claimed the amount of $25,311.99 as a deduction in its return for the year ended September 30, 1944. The respondent allowed the deduction of $1,934.52 and disallowed *52 the balance. Prior to its liquidation in 1941, the taxpayer leased the Langham Apartments to a third party for a term of fifteen years. This lease, known as the "Wallach" lease, was still in force and effect at the time of the taxpayer's liquidation. The cost to the taxpayer of this lease, consisting of broker's commissions, was capitalized in its books and amortized over the life of the lease at the rate of $443.88 per year. The unamortized balance at the time of the taxpayer's liquidation was $5,623.36. That amount was claimed as a deduction by the taxpayer in its final return and was disallowed by the respondent, except to the extent of the annual amortization deduction of $443.88. At all times material hereto California general property taxes, for the state fiscal year beginning July 1, were assessed and became a lien and a personal liability on the first Monday of the preceding month of March. Such taxes were imposed for the twelve month period beginning the following July 1. Since the taxpayer had a fiscal year ending September 30, such property taxes assessed in March of each year were imposed for the state's fiscal year covering the last three months (July, August, and *53 September) of the company's current fiscal year and for the first nine months of the company's next fiscal year. The taxpayer was on the accrual basis, and it followed the accounting method beginning in 1939 (prior thereto the tenant paid the tax) of accruing such property taxes not upon the lien and assessment date but on a monthly basis in the periods for which such taxes were assessed. Thus in each of its fiscal years beginning with 1939-1940 the taxpayer accrued and deducted nine-twelfths of the annual tax which was imposed for the period embracing the first nine months of its fiscal year although the lien and assessment date fell in its preceding fiscal year, and three-twelfths of the annual tax imposed for the period embracing the last three months of its fiscal year although the assessment and lien date fell within its fiscal year. Consistent with this accounting method, the taxpayer accrued on its books and deducted in its 1944 return nine-twelfths ($10,690.59) of the property tax which was assessed and became a lien in March 1943 for the state's tax year beginning July 1, 1943, and three-twelfths ($3,641.08) of the property tax which was assessed and became a lien in March *54 1944 for the state's tax year beginning July 1, 1944. The remaining nine-twelfths of the tax assessed in March 1944 (which was prior to the taxpayer's liquidation) was not claimed as a deduction in the 1944 return but was subsequently claimed and allowed by the respondent, in lieu of the $10,690.59 item claimed in the return. The respondent has thus allowed the entire amount, $14,564.34, accrued in March 1944. Opinion LEMIRE, Judge: The petitioners contend that at the time of its liquidation the taxpayer held the lease which it had acquired on the liquidation of Sevenorm as a capital asset which could not be distributed to its stockholders, and which was, therefore, lost or abandoned when the liquidation took place. The respondent has recognized that the taxpayer did have a depreciable interest in the lease, or in the leased premises, and he has allowed the taxpayer the same amortization deductions as had been allowed Sevenorm. This was on the theory, apparently, that through the nontaxable liquidation of Sevenorm, its lessee, the taxpayer acquired full use of the premises for the remaining term of the lease. Such rights have been recognized as depreciable assets. See Henry B. Miller, 10 B.T.A. 383; *55 Charles B. Bretzfelder et al., Executors, 21 B.T.A. 789; Harriet B. Borland, 27 B.T.A. 538. We cannot agree with the petitioners, however, that any loss was suffered by the taxpayer in respect of the lease when it liquidated and distributed all of its assets to its stockholders. The leasehold rights attached to the property and were passed on to the stockholders, just as were the taxpayer's other assets. The stockholders acquired the same use of the premises for the remaining term of the lease that the taxpayer had held. The fact that the apartment building was under a new lease at the time of the distribution does not affect that situation. The taxpayer's stockholders became the lessors and recipients of the benefits of the new lease. The taxpayer by liquidating may have lost, or forfeited, its right to the remaining annual amortization deductions (we venture no opinion here as to whether that right was passed on to the stockholders) but the voluntary forfeiture of the right to future deductions does not in itself give rise to any deductible loss under the statute. The taxpayer's liquidation was nontaxable under section 112(b)(6), Internal Revenue Code *56 , just as was the liquidation of its subsidiary, Sevenorm. We think that the respondent correctly limited the taxpayer's deduction in 1944 to the annual amortization allowance on the leasehold interest. See Plaza Investment Co., 5 T.C. 1295. On the second issue the same principle applies. The unamortized cost to the taxpayer of the Wallach lease executed in 1941 was not lost as a result of the taxpayer's liquidation. This lease, with whatever rights the taxpayer had in it, was distributed to the stockholders. The petitioners contend that the commissions paid for the procurement of the lease constituted a business expense, rather than a capital expenditure. They conceded on brief, however, that this contention is contrary to our holding in Plaza Investment Co., supra, that a lessor's cost of procuring a lease is a capital expenditure. We held in that case that the lessor corporation, in the year of its liquidation, could deduct only the annual amortization allowance and not the remaining unamortized cost of the lease. That is precisely the issue here. We think that the respondent properly disallowed all of the deductions claimed by the taxpayer in the *57 taxable year 1944 in excess of the annual amortization allowance. The remaining issue relates to the deduction of the California property taxes. These taxes were levied for a fiscal year beginning July 1 and ending June 30. They accrued, or in the language of the stipulation "were assessed and became a lien and a personal liability", on the first Monday of the preceding month of March. The taxes for the period July 1, 1943, to June 30, 1944, accrued in March 1943 and those for the fiscal year July 1, 1944, to June 30, 1945, accrued in March 1944. The taxpayer, following its established practice, accrued these taxes on its books on a month to month basis. Thus, for its fiscal year October 1, 1943, to September 30, 1944, it accrued nine-twelfths ($10,690.59) of the taxes for the California tax year July 1, 1943, to June 30, 1944, and three-twelfths ($3,641.08) of the taxes for the next California tax year ended June 30, 1945. The total amount claimed was $14,331.67. Subsequently, it is stipulated, the taxpayer claimed the deduction of the remaining nine-twelfths of the taxes assessed for the tax year ended June 30, 1945. The respondent allowed the deduction of $14,564.34, the total *58 amount of the taxes accrued in March 1944, but disallowed the balance. The petitioners argue in their briefs that the taxpayer's method of accruing the California taxes month by month was proper. They cite a number of cases in support of this proposition, including Commissioner v. Schock, Gusmer & Co., Inc., 137 Fed. (2d) 750; Allen v. Atlanta Stove Works, Inc., 138 Fed. (2d) 452; New Orleans Cold Storage & Warehouse Co., Ltd., 40 B.T.A. 121; Atlantic Coast Line Railroad Co., 4 T.C. 140. As we understand the petitioners' contentions here, however, they seek to deduct in the taxpayer's 1944 return not only the monthly accruals, that is, nine-twelfths of the tax for the California tax year ended June 30, 1944, as claimed in the return, but also the full amount of the taxes for the year ended June 30, 1945, which were assessed in March 1944. Thus, a total deduction is claimed of $25,254.93 of taxes for the twenty-one months period ended June 30, 1945. This is, of course, not permissible under any method of accounting. The taxpayer must choose one method or another and follow it consistently. Under the method of month by month accruals, *59 which the taxpayer did consistently use, the deduction claimed in its return was proper; but under that method the taxpayer's monthly accruals could not have extended beyond its corporate existence, which ceased with the close of its taxable year ended September 30, 1944. The respondent's allowance exceeds that amount by $232.67. However, no downward adjustment of his determination in respect of this item is permissible, since the effect would be to increase the deficiencies determined and no motion for such increase has been made in these proceedings. Decisions will be entered for the respondent.